DECISION
Relator, DaimlerChrysler Corporation, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that awarded permanent total disability compensation to respondent-claimant, Dennis Palicki, and to issue an order denying such compensation or, in the alternative, to issue an order that meets the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to both the magistrate's findings of fact and conclusions of law.
In its objections to the findings of fact, relator objects to Finding of Fact No. 2, wherein the magistrate related the allowance of an additional psychological claim to Palicki's problem with his low back and anxiety over being poked with a syringe while in the hospital. Relator is correct that, in 1998, the claim was additionally allowed for adjustment disorder with feature of depression but nothing in the 1998 order specifically related that additional allowance to the puncture wound received when claimant was recovering from surgery in 1987. Relator objects to Finding of Fact No. 3, wherein the magistrate stated that claimant first filed for permanent total disability compensation in 1996. Claimant's first application for permanent total disability compensation was in 1995. Relator also objects to the magistrate's Finding of Fact No. 3, in that Dr. Lawrence did not comment on claimant's ability to lift, twist or bend after his 1991 surgery; rather, relator is correct that Dr. Lawrence instructed claimant not to lift, twist or bend as a result of follow-up appointments in November 1983, and January and July 1984. Last, relator objects to Finding of Fact No. 9, in that the magistrate erred in finding the staff hearing officer relied on the medical reports of Drs. Lawrence and Lieser, rather than the vocational reports of Mr. Kilcher and the MacGuffies to find that claimant had an inability to stoop, a lack of transferable skills and inability to be retrained. We agree with the commission that a fair reading of the magistrate's statement is that the medical reports were taken into account but not that those reports were relied on for non-medical factors.
Therefore, relator's objections to Findings of Fact Nos. 2 and 3 are sustained, and its objection to Finding of Fact No. 9 is overruled. The magistrate's findings of fact are corrected consistent with this decision. Nonetheless, we find that these minor factual errors in the magistrate's decision have no bearing on the correctness of the magistrate's decision.
Relator's objections to the magistrate's conclusions of law are essentially a repeat of the same arguments presented to and rejected by the magistrate.
While Dr. Lawrence did use the term disability rather than impairment, it is clear from his report, which is based on a medical examination and the allowed physical conditions in claimant's claim, that he was using the terms interchangeably and meant impairment. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Relator also argues that the medical reports of Dr. Lieser and the vocational reports of Dr. Kilcher do not support a finding of permanent total disability. Combining the restrictions imposed by Dr. Lieser and Mr. Kilcher's finding that those restrictions, in addition to claimant's limited education and lack of transferable skills, would preclude retraining for any job that would be within his reduced residual functional capacity supports a finding of permanent total disability compensation.
While relator is correct that the MacGuffies used an incorrect standard for sustained remunerative employment, apparently equating it to a 40-hour work week, the commission found claimant's medical condition alone precluded sustained remunerative employment and any error in reliance on the MacGuffies' report is harmless.
Relator also contends that the commission acted as a psychologist by discussing psychological conditions without supporting psychological evidence. The commission did not grant permanent total disability based on claimant's psychological conditions but, rather, based on the medical conditions of his claim and, therefore, to the extent there is any error in the commission's analysis, it is harmless.
Last, despite relator's objections, the order sufficiently meets the requirements of Noll.
Therefore, upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's findings of fact, except as indicated herein, and adopts the magistrate's conclusions of law. Relator's objections to the magistrate's decision are sustained in part and overruled in part, and the requested writ of mandamus is denied.
Objections sustained in part and overruled in part, writ of mandamus denied.
 APPENDIX A IN MANDAMUS
Relator, DaimlerChrysler Corporation, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded permanent total disability ("PTD") compensation to respondent Dennis Palicki ("claimant") and to issue an order denying claimant's application for PTD compensation. In the alternative, relator asks that the commission be ordered to vacate its prior order, to conduct a further hearing in this matter, and to issue an order either granting or denying the requested compensation which complies with the requirements of the law.
Findings of Fact:
1. Claimant sustained a work-related injury on May 5, 1981 and his claim was ultimately allowed for: "Acute lumbar strain; herniated lumbar disc at L4, L5; puncture wound of left leg; hypochondriasis; herniated disc L3-4, L5-S1; degenerative changes lumbar spine, including facet joint disease L4-5 and L5-S1; adjustment disorder with features of depression."
2. Claimant worked on and off the next two years after the injury and had back surgery on September 23, 1983 to remove his L5 lumbar disc. Claimant was off work for two years following this surgery. In 1987, his condition flared up and a second back surgery was required. This procedure was performed on April 20, 1987, and involved a right L4-5 micro-lumbar discectomy. Unfortunately, while recovering from this second injury, claimant was accidentally poked with a used syringe. Due to the stress from his low back problems and his anxiety regarding being poked with a used syringe, claimant's claim was additionally allowed for the psychological condition of adjustment disorder with features of depression. In 1989, claimant underwent a third back surgery involving right L4-5 micro-lumbar decompression. Claimant returned to work following this surgery; however, in 1991, he had a fourth back surgery. Claimant's fifth lumbar decompression surgery was performed in 1998. Claimant has been off work as a result of the allowed conditions since August 5, 1991.
3. Claimant filed his first application for PTD compensation in 1996. At that time, claimant's claim was allowed only for the following conditions: "Acute lumbar strain; herniated lumbar disc at L4-5; puncture wound of left leg; hypochondriasis[.]" At that time, claimant's attending physician, Dr. Edmund P. Lawrence, did not opine that claimant was permanently and totally disabled from any and all gainful employment; instead, Dr. Lawrence opined that claimant should not return to his former position of employment or any work that involves similar duties of lifting, twisting and bending. The commission denied the application for PTD compensation by order dated July 10, 1996.
4. On October 3, 2000, claimant filed his second application for PTD compensation. In support of his application, claimant submitted the January 13, 2000 report of Dr. Lawrence who opined that, since the denial of his first application for PTD compensation, claimant's physical condition and disability has worsened. Within a reasonable degree of medical probability, Dr. Lawrence opined that claimant was permanently and totally disabled from sustained remunerative employment associated with the physical injuries he has sustained in this claim.
5. Claimant was examined by commission specialist Dr. Thomas E. Lieser, who issued a report dated January 10, 2001. Dr. Lieser opined that claimant had reached maximum medical improvement, assessed a 16 percent whole person impairment with regard to the physical conditions, opined that claimant was not capable of resuming his former position of employment, and opined that claimant would be capable of resuming sustained remunerative employment within the restrictions outlined on the occupational activity form. However, Dr. Lieser did note that claimant's use of narcotic pain medication would preclude his working in an industrial setting around automated equipment, operating of automatic equipment or driving.
6. In completing the occupational activity assessment, Dr. Lieser opined that claimant was unrestricted in his ability to sit and could stand and walk for zero to three hours; was unrestricted in his ability to lift, carry, push, or otherwise move up to twenty pounds; was unrestricted in his ability to climb stairs, use foot controls, handle objects, and reach overhead and at waist level; and was precluded entirely from climbing ladders, crouching, stooping, bending, and kneeling, as well as reaching at knee and floor level.
7. Claimant submitted the March 1, 2001 vocational report prepared by Karen J. MacGuffie, MA, CRC, and Robert A. MacGuffie, Ph.D. The MacGuffies administered the Career Ability Placement Survey to claimant. Based upon this testing, the MacGuffies noted that claimant's test scores in basic skills are not up to the level of being competitive for work in the national economy; his ability to use verbal reasoning or arithmetic is very low; many unskilled jobs require the use of these basic skills; and, that claimant does not have the aptitudes for other categories of work found in industry requiring the ability to perform assembly or production tasks. The MacGuffies noted that from a medical standpoint alone, claimant is limited to sedentary work that does not involve being in an industrial setting. However, from a vocational standpoint, the MacGuffies indicated that claimant is permanently and totally disabled. In their report, the MacGuffies concluded as follows:
 The vocational testing demonstrates that while the claimant does have some aptitudes for reading, his verbal skills are not competitive for seeking sedentary work that requires language usage and verbal reasoning. He is not capable of competing for cashiering jobs or work in industry that requires performing assembly or production tasks.
 The claimant underwent an extensive rehabilitation program that resulted in job placement. He continued to work in that position until his back condition prevented it. He is still experiencing the same amount of pain and weakness that caused him to leave his last job. It is unlikely that it will improve enough to allow him to put in a 40-hour workweek.
 Furthermore, he has no transferable skills or educational credentials that would make him a highly marketable candidate for work.
8. An employability assessment report was issued by Dr. John P. Kilcher, dated February 19, 2001. Based upon the report of Dr. Lawrence, Dr. Kilcher noted that claimant was not employable. Based upon the report of Dr. Lieser, Dr. Kilcher noted that claimant could not return to his former position of employment but listed other jobs which he felt claimant could perform. Dr. Kilcher noted that claimant's age of forty-five years would not be detrimental in his ability to be employed and he would be qualified to participate in retraining and rehabilitation programs. With regard to his education abilities, Dr. Kilcher noted that claimant would qualify for entry-level jobs through on-the-job training that would be within his reduced residual functional capacity but that he would not be qualified to participate in formal retraining programs. Based upon claimant's prior work history, Dr. Kilcher opined that he would have the ability to perform entry-level jobs through on-the-job training within his reduced residual functional capacity; however, he would not have acquired any transferable skills for a job that would be within his reduced residual functional capacity. Dr. Kilcher noted further that claimant's complete inability to stoop, pursuant to the report of Dr. Lieser, as well as his inability to crouch, or bend, and the restriction to sedentary work would significantly reduce the type of work activity claimant could perform. Dr. Kilcher opined that claimant's inability to stoop was a significant detriment.
9. Claimant's application was heard before a staff hearing officer ("SHO") on May 11, 2001, and resulted in an order granting claimant's application. In the order, the SHO noted that the decision was based particularly upon the medical report of Drs. Lawrence and Lieser, as well as the vocational reports prepared by Dr. Kilcher and the MacGuffies. Taking into account the medical reports of Drs. Lawrence and Lieser, the SHO opined that claimant's complete inability to stoop, his lack of transferable skills and inability to be retrained would severely limit the jobs available to him. The SHO concluded as follows:
 Therefore, after hearing, this adjudicator does find that the medical impairment resulting from the allowed conditions in this claim does prohibit the claimant's return to his former position of employment, as well as prohibits the claimant from performing any sustained remunerative employment. -Furthermore, this adjudicator finds that, on a vocational basis, claimant does not have the potential, from either transferable skills, rehabilitation services, or other types of retraining, to adapt to other forms of sustained remunerative employment. It is, therefore, the finding of this Staff Hearing Officer that the claimant is permanently and totally disabled due to the residual's of the allowed conditions in claim number 749572-22.
 Therefore, the claimant is hereby awarded Permanent and Total Disability compensation, pursuant to Ohio Revised Code Section 4123.58(A), from November 3, 2000 through May 11, 2001, and continuing thereafter without suspension unless future facts or circumstances warrant a change, pursuant to Ohio Revised Code Section 4123.52. The starting date of Permanent and Total Disability Compensation is based upon the November 3, 2000 report of claimant's attending neurosurgeon, Edmund P. Lawrence, Jr., M.D.
(The commission's report can be found at pages 133-136 of the record for the court's review.)
10. Relator's request for reconsideration was denied by order mailed July 14, 2001.
11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator challenges the commission's order in the following respects: Dr. Lawrence's report cannot constitute some evidence upon which the commission could rely because his opinion focused upon "disability" and not "impairment" and, by merely checking boxes on a form, his report was conclusory; the report of Dr. Lieser could not be relied upon because he found that claimant had only a 16 percent impairment and concluded that he could work within the physical restrictions placed on him; the vocational report of Dr. Kilcher cannot be relied upon as he actually identified jobs which claimant could perform; the MacGuffie vocational report cannot constitute some evidence upon which the commission relied as that report clearly only addressed claimant's ability to work a 40 hour week and differed from the report prepared in 1996 without providing an explanation; the commission discussed psychological conditions without citing psychological evidence relied upon; and the commission's order does not comply with the requirements of Noll. For the reasons that follow, this magistrate concludes that relator does not demonstrate that the commission abused its discretion in granting the claimant PTD compensation.
From a medical standpoint, the SHO relied upon the reports of both Drs. Lawrence and Lieser. Dr. Lawrence opined that claimant's condition had worsened since his original application and that he is permanently and totally disabled from performing some sustained remunerative employment. Relator challenges Dr. Lawrence's report in two respects: the brevity of the report and the fact that Dr. Lawrence used the word "disabled" instead of the word "impaired." First, with regards to its brevity, such a complaint does not remove the report from evidentiary consideration. The record also contains a prior report from Dr. Lawrence which was submitted with the first application for PTD compensation. This report details claimant's problems relating to the allowed conditions, the surgeries which claimant has had, and the lack of success. In that report, Dr. Lawrence did not render an opinion as to whether claimant was capable of performing any work; however, the report does provide a great deal of detail. Dr. Lawrence was claimant's treating physician. Further, there is no requirement that a doctor's report must be a certain length. The real question is whether Dr. Lawrence properly gave an opinion as to "impairment" as opposed to "disability."
In Stephenson, the court noted that doctors' reports regularly used the terms "disability" and "impairment" interchangeably, and that while such usage is not in accordance with the commission's medical examination manual it may be concluded that reference to a claimant's physical impairment is generally intended. As such, the court found that the fact that a doctor's report offers an opinion as the ultimate facts to be determined by the commission does not necessarily detract from the reliability of the report. Questions of credibility and the rate to be given evidence are clearly within the commission's discretionary powers. Teece, supra. Upon review, this magistrate concludes that Dr. Lawrence did not impermissibly give an opinion as to "disability" as is argued by relator, and that the commission did not abuse its discretion in relying upon that report. Dr. Lawrence noted that claimant's "physical condition" had worsened and that he was precluded from performing sustained remunerative employment based upon the physical injuries allowed in the claim. The report of Dr. Lawrence, standing alone, provided some evidence for the commission to grant claimant PTD compensation without consideration of any other evidence in the record. This first argument lacks merit.
Relator also contends that the report of Dr. Lieser cannot be found to support the payment of PTD compensation because Dr. Lieser found only a 16 percent impairment and concluded that claimant could work within the restrictions outlined on the occupational activity assessment. However, degree of impairment alone is not the critical factor in the present case. Further, the fact that Mr. Kilcher opined that claimant could work within the physical restrictions Dr. Lieser gave is also not dispositive. The commission specifically found that Dr. Lieser's specific prohibition from any stooping removed any job for which claimant would otherwise be qualified. In this regard, the commission agreed with the analysis of Mr. Kilcher, as follows:
 * * * Mr. Kilcher stated his professional opinion, as a vocational expert, that, in relation to the restrictions identified by Dr. Lieser, "This would significantly reduce the types of work activity that he could perform." Mr. Kilcher notes that he has approximately 20 years of expereince in rehabilitation and also providing job placement assistance for claimants throughout the State of Ohio. He further indicates that his opinion is further substantiated by the July 2, 1996 notice in the Federal Register at Volume 61, Number 128, where it states that "An ability to stoop occasionally; i.e. from very little up to 1/3 of the time, is required in most unskilled, sedentary occupations. A complete inability to _stoop significantly erodes the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." As noted previously, the Industrial Commission occupational medicine specialist, Thomas E. Lieser, M.D. indicates that claimant is totally prohibited from crouching, stooping, bending, and kneeling. Therefore, it is the finding of this Staff Hearing Officer that such complete inability to crouch, stoop, bend, and kneel creates a very significant barrier in regard to claimant's ability to obtain entry-level employment within his current residual functional capacity. * * * [Emphasis sic.]
Even though Dr. Lieser opined that claimant could work within the physical restrictions he listed, the commission concluded that there were no jobs available to claimant which he could perform within those restrictions given the prohibition against stooping. This decision was within the province of the commission to decide. Further, nothing precludes the commission from accepting part of a vocational expert's analysis while rejecting the vocational expert's opinion that claimant can perform certain jobs. The ultimate decision as to disability is within the province of the commission to determine with or without the aid of vocational reports. The commission has the discretion to accept one vocational report while rejecting another vocational report and can reject all vocational reports and conduct its own analysis of the nonmedical factors. See State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266. As such, this magistrate concludes that the commission did not abuse its discretion when it agreed with Mr. Kilcher's assessment of the impact of claimant's inability to stoop, his ability to perform any jobs, and was not required to accept Mr. Kilcher's conclusion that claimant could perform a couple of jobs. These arguments are likewise rejected.
Relator also contends that the MacGuffie vocational report cannot constitute some evidence upon which the commission could rely. Relator first points out that the MacGuffies indicated that it was unlikely that claimant's pain and weakness were unproven enough to allow him to put in a 40 hour workweek. Relator contends that one must infer from this that the MacGuffies opined that claimant could perform part-time work and, as such should be denied PTD compensation. This magistrate disagrees.
First, as stated previously, the commission specifically found that the medical impairment resulting from the allowed conditions alone prohibits claimant from returning to his former position of employment as well as prohibits him from performing any sustained remunerative employment. As such, the commission was not required to conduct an analysis of the nonmedical factors. So, even if this statement in the MacGuffies' report removes it from evidentiary consideration, relator is not entitled to a writ of mandamus. Likewise, relator complains that, because, in 1996, the MacGuffies indicated claimant had the aptitude to perform unskilled entry-level jobs in clerical fields, such as cashier, file clerk or surveillance system monitor, their latter report indicates it cannot be relied upon because claimant is not capable of competing for cashiering jobs. However, relator fails to point out that the MacGuffies administered different tests to claimant at each of these time periods, and the results of those tests might very well be what accounted for the difference in the ultimate opinion as to claimant's ability to perform clerical jobs. However, as stated previously, any deficiencies in the vocational report of the MacGuffies is inconsequential, inasmuch as the commission granted PTD compensation based solely upon the medical factors. As such, this argument is not well-taken.
Relator next contends that the commission abused its discretion by discussing the psychological conditions without citing any psychological evidence. In the body of the commission's order, the SHO discussed the fact that claimant had been poked by a used needle, that it frightened both claimant and his wife, that his wife was afraid that he might have contacted Aids, and now insists that he wear a condom. Relator does not contend that this statement is untrue. These statements are contained in a rather lengthy paragraph wherein the SHO detailed the history of claimant's claim and treatment. Further, it is apparent that the commission did not grant claimant's PTD compensation based upon the allowance of the psychological conditions; instead, PTD compensation was granted solely on the allowed physical conditions. As such, how the commission's statements as to claimant's distress over having been poked with a used needle impacts on the order in such a way as to cause an abuse of discretion is simply not apparent and is not borne out by the record. As such, this argument is likewise not well-taken.
Lastly, relator contends that the commission's order does not comply with the requirements of Noll. This magistrate disagrees. The commission specifically identified the medical evidence relied upon and this magistrate has already concluded that that medical evidence constitutes some evidence upon which the commission could rely in granting claimant PTD compensation. The report of Dr. Lawrence, standing alone, constitutes sufficient evidence to grant the requested compensation. The commission did go on to discuss certain vocational factors; however, such discussion does not render the commission's order invalid. The commission identified the evidence relied upon and gave a brief explanation. As such, the commission's order satisfies Noll, and this argument is likewise not well-taken.
At oral argument, relator stressed that the SHO failed to explain why PTD compensation was being granted in 2001 when it had been denied in 1996. Relator contends that compensation is being granted now on the exact same evidence it was denied in 1996. Contrary to relator's assertions, Dr. Lawrence opined that claimant's condition had worsened since 1996. Claimant had newly allowed conditions and had undergone further surgery. Furthermore, the SHO cited some evidence upon which his decision was based and gave an explanation as required.
Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in granting claimant PTD compensation, and this court should deny relator's request for a writ of mandamus.